**IT IS ORDERED as set forth below:**

**Date: December 10, 2020**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-54666-JWC |
| CYNTHIA HORNE COWAN, | CHAPTER 7 |
| Debtor. | |

## MEMORANDUM OPINION AND ORDER

This Matter is before the Court on the Motion for Entry of an Order Compelling MP Group South, LLC to Appear and Show Cause as to Why it Should Not Be Held in Contempt for Violation of the Discharge Injunction Imposed by § 524(a)(2) of the Bankruptcy Code for Sanctions, including an Award of Damages and Reasonable Attorney's Fees, and Related Relief (Doc. No. 22) (the "Motion") filed by Cynthia Horne Cowan ("Debtor"). Through the Motion, Debtor requests MP Group South, LLC ("Respondent") (i) be held in contempt for violation of the

1

discharge injunction imposed by 11 U.S.C. § 524(a)(2) for conduct related to a pending state court action against Debtor, (ii) be sanctioned for its conduct by imposition of damages, including punitive damages and reasonable attorney's fees, and (iii) be enjoined from further collection activity against Debtor.

Debtor filed the Motion on February 25, 2020 and Respondent filed a response on March 27, 2020 (Doc. No. 23) (the "Response").  The Court held an evidentiary hearing on the Motion on August 20, 2020 (the "Hearing"), after which the Court took the matter under advisement and allowed the parties to file additional briefs concerning whether the continuation of the state court litigation violated Debtor's chapter 7 bankruptcy discharge.  Neither party filed supplemental briefs.  Having considered the documents filed by the parties, the testimony offered at the Hearing, the evidence submitted, the arguments of counsel, and the record in Debtor's underlying bankruptcy case, the Court will grant the Motion in part and deny the Motion in part for the reasons that follow.

**I.    Jurisdiction**

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  As this Court issued the discharge order in question, this Court "alone possesses the power to enforce compliance with and punish contempt of that order," and this "power to sanction contempt is jurisdictional."  *Green Point Credit, LLC v. McLean* (*In re McLean*)*,* 794 F.3d 1313, 1318-19 (11th Cir. 2015) (citing *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012)); *see also Cox v. Zale Del., Inc*., 239 F.3d 910, 917 (7th Cir. 2001) ("[A]ffirmative relief can be sought only in the bankruptcy court that issued the discharge.").  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (I).

## II. Factual and Procedural History

Respondent and Debtor entered into a business arrangement on October 7, 2016 in which Debtor sold Respondent's services to third parties (the "Arrangement").[1] As part of the Arrangement, Debtor testified that she agreed to a 12-month non-disclosure and non-solicitation agreement upon termination of the Arrangement. The Arrangement was effectively terminated on December 6, 2017. On January 22, 2018, Respondent filed a complaint against Debtor (the "Complaint") in the Superior Court of Cobb County, Georgia (the "State Court"), asserting four counts against Debtor: (1) money owed; (2) breach of contract; (3) tortious interference with contract; and (4) a request for a temporary restraining order and permanent injunctive relief.

In February of 2018, Respondent served Debtor with the Complaint. Debtor did not file an answer to the Complaint, but on March 19, 2018, Debtor filed a petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"),[2] commencing Debtor's underlying bankruptcy case. Debtor listed Respondent as an unsecured creditor in her bankruptcy schedules and disclosed the pending State Court litigation in her Statement of Financial Affairs.[3] Notice of the commencement of the case was mailed to Respondent addressed to its attorney in

---

[1] Debtor testified that it was an independent contractor relationship, but neither party sought to admit into evidence any of the agreements that evidenced the Arrangement.

[2] Unless otherwise indicated, all further statutory references in the text are to the Bankruptcy Code.

[3] The State Court litigation was disclosed on p. 10, and the claim of Respondent was scheduled as a general unsecured claim listed on p. 27 with the address of Respondent's counsel of record in the State Court litigation. (Doc. No. 1). Respondent is listed in the schedules as "MP South" instead of "MP Group South, LLC." The Court finds Respondent was sufficiently identified in the schedules with an accurate address for its counsel of record in the State Court litigation to put it on notice of the bankruptcy. *See In re Alton*, 837 F.2d 457, 460 (11th Cir. 1988) (holding that where a creditor receives actual notice of the bankruptcy proceeding the purposes of notice are satisfied, i.e. notice adequate to apprise him of the pendency of the action and afford him an opportunity to present objections) and *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 560 (2008) (noting the "well-settled" principle that notice to an attorney is notice to the client employing him when such notice comes to the attorney regarding the subject matter of his employment).

the State Court litigation (Doc. No. 8, p.3). Debtor then filed a notice of bankruptcy with the State Court, which stayed the State Court litigation.

On June 29, 2018, Debtor's bankruptcy case was closed, and Debtor received a discharge pursuant to order of this Court (the "Discharge Order"). Thus, the automatic stay terminated as of June 29, 2018, *see* 11 U.S.C. § 362(c)(2), but the discharge injunction went into effect on the same date, *see* 11 U.S.C. § 524(a)(2). A copy of the Discharge Order was mailed to Respondent addressed to its attorney in the State Court litigation.[4]

Subsequent to entry of the Discharge Order, the State Court scheduled a status conference in the litigation for November 6, 2019, which was subsequently continued and ultimately held on January 29, 2020 (the "Status Conference").[5] Both parties appeared at the Status Conference. Respondent's counsel argued that it made clear at the Status Conference that it only sought relief for post-petition conduct of the Debtor, but no evidence or testimony was offered on that point at the Hearing. After the Status Conference, the State Court entered a scheduling order reopening discovery and allowing motions to be filed in the case. Respondent served upon Debtor its initial discovery requests on February 10, 2020, which included Plaintiff's First Request for Admissions, the Notice to Produce and Request for Production of Documents, and Plaintiff's First Continuing Interrogatories (collectively, the "Discovery Requests"). Upon receipt of the Discovery Requests, Debtor obtained leave to reopen her bankruptcy case and filed the Motion currently under consideration.

---

[4] Confirmation of service of the Discharge Order on Respondent's counsel of record in the State Court litigation appears at Docket No. 16, p. 3 of this Court's records in Debtor's case. The Court can take judicial notice of the records of this Court. *U.S. v. Rey*, 811 F.2d 1453 n.5 (11th Cir. 1987).

[5] Counsel for Respondent indicated in closing arguments that the Status Conference was initiated by the State Court on its own volition, but no testimony or evidence was offered on that point.

4

**III.     Arguments of Parties**

Debtor argued in her Motion and at the Hearing that she provided adequate notice of her bankruptcy to Respondent, that the debt owed to Respondent was properly scheduled, and that said debt was discharged pursuant to the Discharge Order. Despite this, according to Debtor, Respondent resumed the State Court litigation following the discharge and continued its attempt to collect discharged debts. In particular, Debtor argues Respondent made no attempt to amend its complaint in the State Court litigation to assert only post-petition matters and served the Discovery Requests on Debtor following the Status Conference demanding information related to prepetition debts clearly covered by the Discharge Order. Because Respondent was fully aware of the Discharge Order, Debtor argues Respondent's actions constitute a willful violation of the Discharge Order.

In opposition, Respondent argues that it does not seek to collect on any prepetition debts. It alleges that it abandoned all efforts to collect on prepetition debts after the entry of the Discharge Order and was pursuing only equitable relief for Debtor's continuing violation of her contractual obligations post discharge (Response, p. 5). Specifically, Respondent contends that Debtor ignored the non-solicitation agreement and continued to solicit Respondent's clients after filing for bankruptcy. Respondent argues it is for these post-petition contract violations that Respondent seeks recompense in the State Court litigation and not any violation that occurred prepetition. As it merely seeks equitable relief on post-petition claims,[6] Respondent argues no discharge violation occurred.

---

[6] Respondent's arguments on this point were not consistent. At times it argued that it was only seeking equitable relief to enjoin post-petition breaches of a covenant not to solicit but at other times indicated it was pursuing claims for a monetary award, including punitive damages, for any post-petition breaches of the contract.

5

**IV.    Analysis**

    **A.    Discharge Violation**

Section 524 of the Bankruptcy Code provides a debtor with a post-discharge injunction against collection of debts discharged in bankruptcy, and thus embodies the "fresh start" concept of the Bankruptcy Code. *Nationstar Mortg., LLC v. Roth (In re Roth)*, 935 F.3d 1270, 1275 (11th Cir. 2019). This provision is the barrier that prevents creditors from reaching a debtor's wages, property, or assets post discharge. Section 524 provides, in relevant part:

> (a) A discharge in a case under this title ... (2) Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

11 U.S.C. § 524. The question before the Court is whether Respondent's actions before the State Court involved the continuation of an action to collect, recover, or offset a debt discharged in Debtor's bankruptcy. *In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018) ("Since post-petition debts are not discharged, the discharge injunction does not bar efforts to collect post-petition debts."); *In re Davies*, 577 B.R. 352, 361-62 (Bankr. D. Idaho 2017) (holding that prosecuting counterclaim for damages that "clearly arose prior to the . . . petition date" violated discharge injunction); *In re Zellner*, No. 5-15-bk-01286 RNO, 2020 WL 1181337, at *7 (Bankr. M.D. Pa. Mar. 11, 2020) (no violation of discharge injunction where action related to debtor's post-petition failure to comply with state court orders). A creditor violates the discharge injunction under § 524(a)(2) if the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt. *In re McLean,* 794 F.3d at 1321. Debtor, as the moving party, bears the burden of proving by clear and convincing evidence that the discharge injunction was violated. *Henriquez v. Green Tree Servicing*, *LLC* (*In re Henriquez*), 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015).

6

If a violation occurred, courts can then enforce the injunction through § 105 by issuing "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 "grants statutory contempt powers in the bankruptcy context." *In re Hardy*, 97 F.3d 1384, 1389–90 (11th Cir. 1996) ("Therefore, § 105(a) grants courts independent statutory powers to award monetary and other forms of relief for [violations] to the extent such awards are 'necessary [or] appropriate' to carry out the provisions of the Bankruptcy Code.") (internal quotation marks and citations omitted). Together, §§ 524(a)(2) and 105(a) "authorize a court to impose civil contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). In this way, "a court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Id*. at 1799. Accordingly, the threshold issue to be determined is whether Respondent's conduct in the State Court litigation sought to pressure Debtor to repay a discharged debt. If so, then the Court must analyze whether a "fair ground of doubt" exists as to whether the Discharge Order barred Respondent's conduct.

I.   *Did a Discharge Violation Occur?*

Based on the evidence and testimony presented, the Court finds Debtor satisfied her burden of showing clearly and convincingly that Respondent's actions effectively sought to pressure Debtor into repaying a prepetition discharged debt in violation of the Discharge Order. The Court reaches that conclusion for multiple reasons. As an initial matter, Respondent filed the Complaint prior to Debtor filing for bankruptcy. Any claims for money owed, breach of contract, or tortious interference that existed as of the date the Complaint was filed were prepetition claims barred by

7

the Discharge Order. Any claims arising after the filing of the Complaint but prior to the petition date were also prepetition claims barred by the Discharge Order. The testimony and evidence before the Court was uncontroverted that following Debtor's discharge, Respondent undertook no effort to amend the Complaint in the State Court to limit any relief sought to matters not covered by the discharge. Moreover, while Respondent argued that it made clear to the State Court at the Status Conference that it was only pursuing claims for post-petition matters, no testimony or evidence was offered on that point at the Hearing. More importantly, the Discovery Requests issued by Respondent following the Status Conference belie Respondent's arguments and track the prepetition claims asserted in the original Complaint, which were discharged. By Respondent's own admission at the Hearing, "it was a broad and sweeping discovery statement." Specifically, the Discovery Requests demand production of information relating back as far as April 1, 2016, such as bank account numbers, compensation and pay stubs, sources of income for the past three years, as well as information and compensation related to Respondent's former clients starting in December 2017 (clearly a prepetition period). The Discovery Requests are neither temporally limited nor substantively limited to post-petition matters.

Respondent provided no legitimate justification for pursuing discovery of information relating to events in 2016 and 2017, all prior to the bankruptcy petition date. While Respondent argues that it abandoned any effort to pursue discharged claims, the Discovery Requests clearly indicate otherwise. Respondent's only argument at the Hearing was that it sought the prepetition information to show Debtor's bad faith prior to and after entering into the Arrangement in connection with its claims for punitive damages, but that argument provides no justification for pursuing discovery related to periods clearly covered by the discharge. In fact, it proves that Respondent was attempting to recover damages based, at least partially, on Debtor's prepetition

8

conduct. Pursuing discovery related to clearly discharged claims cannot support any post-petition claims that may have survived the discharge. Thus, while Respondent claims it merely sought relief for post-petition breaches of a non-solicitation agreement, Respondent's broad Discovery Requests incontrovertibly sought information pertaining to discharged debts.

The Court is also troubled by Respondent's pursuit of equitable relief more than a year after the Arrangement expired. Based on Debtor's testimony and evidence admitted at the Hearing, the 12-month non-solicitation and non-disclosure agreement the Debtor executed expired December 6, 2018.[7] Given that fact, how could Respondent pursue equitable relief, specifically injunctive relief in 2020, long after the contract expired? *See Crane v. Fort*, No. 5:15-cv-00345-TES-CHW, 2018 WL3028945, at *1 (M.D. Ga. Jun. 18, 2018) (quoting *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472, 483-84 (1995)) ("[I]njunctive relief may only be granted if Plaintiff faces 'any continuing present injury or real and immediate threat of repeated injury.'").[8] Respondent argued it was merely seeking to enjoin Debtor from continuing to breach its agreement not to solicit Respondent's clients, but the non-solicitation agreement in question expired more than a year before Respondent appeared before the State Court at the Status Conference and long before it issued its "broad and sweeping" Discovery Requests.

Under § 524(a)(2), if the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, then the creditor is in violation of the discharge injunction. *In re McLean,*

---

[7] While the underlying non-solicitation and non-disclosure agreement was not offered into evidence, a copy of a letter to Respondent regarding the non-solicitation agreement and the date of its termination was admitted into evidence at the Hearing.

[8] As will be discussed below, because the agreements at issue were not admitted into evidence at the Hearing, the Court cannot determine whether Respondent's claim for equitable relief under any agreements survived the Debtor's discharge.

9

794 F.3d at 1321. Respondent argues that it was merely seeking equitable relief for Debtor's post-petition conduct. Debtor counters that Respondent actually sought to continue the previously stalled litigation in an attempt to recover on prepetition claims. Neither party provided evidence as to the content of the discussions at the Status Conference.[9] As a result, the only evidence the Court can consider is the Discovery Requests, the original Complaint, and testimony from the Debtor that Respondent never amended the Complaint to limit the relief sought and was seeking to enforce a non-solicitation agreement that expired long before the State Court litigation resumed. Based on the record before it, the only conclusion the Court can draw is that Respondent's conduct was a continuation of previously stayed litigation relating to discharged claims. The Court thus concludes that the objective effect of Respondent's conduct was to pressure Debtor into repaying discharged debts. By seeking information going back as far as three years—information that is wholly irrelevant to any contractual violation occurring post-petition—Respondent failed to limit the State Court litigation to matters occurring post-petition. Additionally, pursuing equitable relief to enforce a covenant not to solicit more than a year after it expired only further calls Respondent's conduct into question. Despite Respondent's knowledge and receipt of the Discharge Order, Respondent failed to amend the Complaint to limit its scope to post-petition matters, issued very broad Discovery Requests that clearly relate to discharged claims, and pursued equitable relief to enforce a contract that expired by its own terms in 2018. Viewed objectively, Respondent's conduct violated the discharge injunction.

---

[9] The instructions of the State Court, as far as this Court is aware, did not conflict with the Discharge Order, nor did the State Court instruct Respondent to seek information relating to prepetition discharged debts. The State Court's instruction and the Discharge Order are not incongruous. As a result, it is no shield from liability that Respondent was following the State Court's order.

10

II. *Are Civil Contempt Sanctions Warranted under Taggart?*

Having found that a discharge violation occurred, the Court must next determine if holding Respondent in civil contempt is appropriate. Under § 105(a), civil contempt is appropriate where no "fair ground of doubt" exists as to whether the creditor's conduct violated the discharge order. *Taggart*, 139 S. Ct. at 1800. This objective standard requires the Court to discern whether an objectively reasonable basis exists for concluding that Respondent's conduct was lawful. *In re Roth*, 935 F.3d at 1278. The Court must find the party accused of violating the discharge injunction acted "with knowledge of the [discharge] order" and that "there [was] no fair ground of doubt as to whether the order barred the party's conduct—*i.e.*, no objectively reasonable basis for concluding that the party's conduct might be lawful." *In re Milani*, No. 15-54748-LRC, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020) (citing *In re City of Detroit*, 614 B.R. 255, 265-66 (Bankr. E.D. Mich. 2020)). So, a good-faith belief that an action taken does not violate the discharge injunction will not shield a party if the belief is not objectively reasonable. *In re Jackson*, No. 15-21233 (AMN), 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020).

Considering the post-discharge actions taken by Respondent and the applicable statutes, the Court finds, under the standard adopted by the Supreme Court in *Taggart* and the 11th Circuit in *Roth*, that there was no fair ground of doubt under the circumstances of this case that Respondent's actions were improper in light of the Discharge Order. Respondent was notified of the Discharge Order as Respondent was served with a copy of the Discharge Order through its counsel of record in the State Court litigation at the time it was entered. The Court finds Respondent acted with knowledge of the Discharge Order. *In re Milani*, 2020 WL 5551990, at *5.

11

The Court is similarly not convinced by the evidence presented that Respondent had an objectively reasonable basis for concluding that its conduct was not violative of the Discharge Order. No "fair ground of doubt" exists in the Court's mind that continuing prepetition litigation on prepetition claims without any amendment of the Complaint or limitation of the litigation to post-petition conduct, viewed objectively, violated the terms of the Discharge Order. The Court, therefore, concludes that civil contempt sanctions are appropriate under the circumstances of this case.

### B.    Damages

Civil contempt for violating a discharge order will result in sanctions, which may include actual damages, attorney's fees, and punitive damages, if appropriate. *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000). "Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (alteration and internal quotation marks omitted) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 106 S. Ct. 3019 (1986), *cert. denied*, 134 S. Ct. 901 (2014)).

Here, Debtor's Motion requests sanctions for Respondent's willful violation of the Discharge Order, including actual damages, punitive damages, and attorney's fees. Although § 524 does not specifically authorize monetary relief, the Court may award actual damages for violation of § 524 based upon the inherent contempt power of the Court or the statutory contempt power under § 105(a). *Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 847 (Bankr. W.D. La. 1995); *Miller v. Mayer (In re Miller)*, 81 B.R. 669, 679 (Bankr. M.D. Fla. 1988), and later proceeding, 89 B.R. 942, 944 (Bankr. M.D. Fla. 1988) (actual damages, attorney fees, and

costs allowed); *In re Bowling*, 116 B.R. 659, 664–65 (Bankr. S.D. Ind. 1990) (relying solely on statutory contempt powers of § 105 to award actual damages); *see In re McLean*, 794 F.3d at 1325 (holding that "bankruptcy courts generally have authority to award compensatory sanctions for emotional distress caused by a violation of the discharge injunction").

At the Hearing Debtor failed to establish any actual damages. She provided no evidence of monetary damages, and while she did provide limited testimony that arguably attempted to show emotional distress, the testimony was not sufficient to establish damages for emotional distress. To recover damages for emotional distress, "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the [discharge injunction]." *In re McLean*, 794 F.3d at 1325-26 (alteration in original) (quoting *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014)). In showing emotional distress, "a debtor must prove that [her] emotional distress is more than fleeting, inconsequential, and medically insignificant." *In re Nibbelink*, 403 B.R. 113, 120 (Bankr. M.D. Fla. 2009) (citing *In re Hedetneimi*, 297 B.R. 837, 842 (Bankr. M.D. Fla. 2003)). Alternatively, evidence of conduct that is egregious or extreme in nature such that emotional distress would be expected to occur will suffice. *Id.*

Debtor failed to provide the Court with sufficient evidence indicating any actual damages resulted from emotional distress, aggravation, or even inconvenience. The only evidence arguably supporting a claim for emotional distress was Debtor's testimony that Respondent's counsel made phone calls to her and that she felt "harassed" by Respondent. But Debtor failed to elucidate the nature, timing, or number of those calls and provided little to no description of the nature of the harassment or its effect on her. Mere annoyance will not suffice. *In re Nibbelink*, 403 B.R. at 120.

13

Debtor did not establish significant emotional distress nor did she adequately establish a causal connection between any distress she suffered and the discharge violations. Consequently, the Court finds that Debtor failed to meet her burden to prove actual damages resulting from the discharge violations.

Debtor also requests punitive damages. The Court retains the authority to impose punitive damages for a violation of the discharge injunction pursuant to its statutory contempt powers under § 105(a). *In re Nibbelink*, 403 B.R. at 121. Courts are "traditionally [] reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." *In re McLean*, 794 F.3d at 1325 (quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989)); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548–49 (1999) (observing that, in several contexts, a punitive award requires a litigant's "reckless disregard for the matter of whether its conduct was prohibited"). "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the [party's] conduct." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

While the Court agrees that Respondent's conduct was willful and approaches a reckless disregard of the Discharge Order, the Court does not find Respondent's actions sufficiently egregious or extreme to warrant punitive damages. It is certainly troubling to the Court that Respondent failed to amend the Complaint to limit its scope, issued very broad Discovery Requests that clearly related to discharged claims, and pursued equitable relief to enforce a contract that expired in 2018, but these actions, though concerning, do not rise to the level of conduct the 11th Circuit describes in *McLean*. The Court does not find that Respondent's actions exemplify

14

reprehensible conduct, nor does it find sufficient evidence that Respondent blatantly and callously disregarded the Discharge Order.[10]  Debtor is not entitled to punitive damages.

As for attorney's fees, generally the "American Rule" requires each party to litigation bear its own litigation costs.  *In re Cherry*, 247 B.R. at 186.  However, an exception to the rule exists for violations of a court order, including a discharge order.  *In re Alder*, No. 10-28229-JS, 2016 WL 5947220, at *3 (Bankr. D. Md. Oct. 13, 2016) (citing *Baxter v. Summerfield Inv., Grp., LLC. (In re Baxter)*, Nos. 13-27709-DER, 14-00386-DER, 2015 WL 6122158, at *8 (Bankr. D. Md. Oct. 15, 2015)).  "Under federal law, attorney's fees are awarded based upon the lodestar method of computation."  *In re Nibbelink*, 403 B.R. at 122 (citation omitted).  To determine if the attorney's fees are reasonable, the Court compares the lodestar—the product of the number of hours expended and the hourly rate—and the contemporaneous time records detailing the dates and services provided.  *Id.*  The requesting party bears the burden of producing sufficient evidence that the requested amount of attorney's fees is in line with the current market rate.  *Id.* (citing *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987)).

Debtor failed to provide evidence detailing a reasonable award of attorney's fees or expenses. Debtor's attorney announced her requested fees during closing arguments at the Hearing, but the Court cannot consider this evidence as Respondent had no opportunity to object to the amount.  In any event, Debtor failed to provide documentation supporting the reasonableness of the fees.  The Court cannot award attorney's fees without any evidence upon which to base the award.  Nonetheless, the Court finds that attorney's fees are warranted based on the circumstances of this case.  Respondent's conduct, which this Court previously concluded was violative of the

---

[10] The Supreme Court noted that a party's intentional malice was the decisive factor in a "close and difficult" case. *BMW of North America, Inc.*, 517 U.S. 559, 576 (citing *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 468 (1993)).

15

Discharge Order, forced Debtor to incur attorney's fees and expenses to get the full benefit of the discharge issued by this Court. Accordingly, the Court will allow Debtor to submit by separate application a request for any fees and expenses incurred in reopening Debtor's bankruptcy case and prosecuting the Motion. Any such application should include corresponding records supporting the reasonableness of the award. Respondent will have an opportunity to object to the application before a final award is entered.

### C.  Pending State Court Litigation

Lastly, Debtor requests the Court to enjoin Respondent from continuing the State Court litigation. Certainly, Respondent is already enjoined by the Discharge Order from pursuing prepetition debts in the State Court litigation, but whether the Discharge Order enjoins Respondent from pursuing a damage claim for Debtor's alleged post-petition breaches presents a thornier issue. On cross examination, Debtor testified that she continued to have contact with Respondent's clients after the bankruptcy filing, which Respondent contends was in violation of her contractual obligations. "While the discharge ensures debtors a fresh start, it is not a pass that allows a debtor to engage in post-petition conduct that injures others." *In re Milani*, 2020 WL 5551990, at *8. But the issue is not necessarily limited to a clear-cut analysis of prepetition conduct v. post-petition conduct. Often, whether a claim is pre- or post-petition is not clear and requires fact finding and legal analysis to ensure that all parties are treated fairly. *Id.* Unfortunately, based on the record before it, the Court is unable to resolve numerous issues relating to the Arrangement as neither party sought to admit any agreements between the parties into evidence. Nor did the parties provide any briefs or legal analysis of the issues.

It is not clear whether any contractual provisions between the parties survived the discharge. On one hand, if a contract or a non-solicitation agreement constitutes an executory

16

contract, an executory contract not assumed by the trustee in the bankruptcy case is deemed rejected. 11 U.S.C. § 365(d)(1). On the other hand, some courts have found that a covenant not to compete, similar to a covenant not to solicit, may survive the rejection of an executory contract where the only remaining obligation is the covenant not to compete. *In re Noco, Inc.,* 76 B.R. 839, 843 (Bankr. N.D. Fla. 1987); *see In re Schneeweiss,* 233 B.R. 28 (Bankr. N.D.N.Y. 1998) (finding entire contract non-executory where only obligation remaining was to comply with restrictive covenant not to compete); *see also In re Drake*, 136 B.R. 325 (Bankr. D. Mass. 1992) (holding that "the contract does not contain the continuing mutual obligations necessary to constitute an executory contract"); *cf. Silk Plants, Etc. Franchise Sys., Inc. v. Register (In re Register)*, 100 B.R. 360 (M.D. Tenn. 1989) (agreeing with bankruptcy court finding that covenant not to compete was not severable from the rest of the contract).

Even if the non-solicitation agreement does not constitute an executory contract, the covenant is severable from the parties' other contractual arrangements, or the agreement otherwise survives rejection, the question becomes whether a post-petition violation of the covenant gives rise to a dischargeable debt.[11] Courts are not unanimous on this issue. *See In re Annabel*, 263 B.R. 19 (Bankr. N.D.N.Y. 2001). The seminal case determining whether a right to injunctive relief is dischargeable, *Ohio v. Kovacs*, based its determination on whether performance of the obligation involves the payment of money. 469 U.S. 275, 281 (1985). In reviewing relevant case law, most courts agree that a covenant not to compete constitutes a dischargeable claim where performance of the covenant involves an expenditure of money. *See In re Brown*, 237 B.R. 740 (Bankr. C.D. Cal. 1999); *see also May v. Charles Booher & Assoc. (In re May),* 141 B.R. 940, 943 (Bankr. S.D.

---

[11] The Bankruptcy Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). "A 'claim' includes a 'right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.'" *In re Annabel*, 263 B.R. 19, 26 (Bankr. N.D.N.Y. 2001) (quoting 11 U.S.C. § 101(5)(B)).

17

Ohio 1992). However, when the contract or even state law provides the option of either injunctive relief or a monetary award, courts diverge. Some courts have found non-compete covenants are discharged if state law allows a breach to be reduced to monetary damages. *See In re Kilpatrick*, 160 B.R. 560, 564 (Bankr. E.D. Mich. 1993) (holding that because Michigan law permits a breach of a non-compete covenant to be reduced to monetary damages it is a claim and thus dischargeable); *Maids International, Inc. v. Ward (In re Ward)*, 194 B.R. 703, 712 (Bankr. D. Mass. 1996) (finding that agreement providing option of injunctive relief or monetary damages constitutes a claim). Other courts, such as the Sixth and Seventh Circuits, the only circuit courts to consider the issue thus far, find that a covenant not to compete constitutes a dischargeable claim only if monetary damages are an *alternative* to, and not in addition to, equitable relief. *Kennedy v. Medicap Pharmacies, Inc.,* 267 F.3d 493, 497 (6th Cir. 2001); *In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994).

Based on the evidentiary record before it, the Court is unable to determine how the above-cited law applies to the parties in this case. Both parties provided copies of some agreements as proposed exhibits for the Hearing, but neither party sought to have them identified or authenticated by any witness or offered into evidence. *See In re Samuel Ratamansky*, 7 B.R. 829, 832-33 (Bankr. E.D. Pa. 1980) ("[T]he only evidence which [the court] may consider in resolving this contested matter is the evidence introduced at the hearing by one of the parties."). Without any agreements in the record for the Court to consider, and without the benefit of any analysis from the parties, the Court is unable to analyze whether the non-solicitation agreement survived Debtor's discharge at all, much less whether any damage claims survived. As previously indicated, however, if Respondent's claims for equitable relief are based on a 12-month non-solicitation agreement that expired on December 6, 2018, the Court does not understand how Respondent can seek equitable

18

relief in 2020, nearly two years after the non-solicitation agreement expired by its own terms. The only other possible claims that Respondent could pursue at this point appear to be damage claims for alleged post-petition breaches by Debtor occurring after the filing of the bankruptcy petition but before the expiration of the Arrangement. Just as it is unclear whether Respondent could have enjoined Debtor from breaching the non-solicitation agreement after the Discharge Order while the agreement was still in effect; it is equally unclear whether Respondent can now pursue damage claims for any past breaches of the agreement. While the Court cannot rule one way or another on those issues based on the record before it, Respondent should exercise caution if it chooses to continue any proceedings in the State Court. Debtor's request for an injunction will be denied without prejudice.[12]

## V.  Conclusion

The Court finds that Respondent violated the discharge injunction articulated under 11 U.S.C. § 524. There is no fair ground of doubt as to whether Respondent's conduct violated the Discharge Order, so civil contempt under 11 U.S.C. § 105(a) is appropriate under these circumstances. Nonetheless, the Court finds that Debtor did not carry her burden to prove actual damages or provide justification warranting punitive damages. The Court awards Debtor attorney's fees and expenses in an amount to be determined by separate application. Finally, the Court declines Respondent's request to further enjoin the state court litigation for the reasons set forth above.

---

[12] The record before the Court is insufficient to grant the request for injunctive relief, but the Discharge Order remains in effect. Respondent should not construe anything in this Order to mean there is a fair ground of doubt on whether pursuit of any further relief in the State Court is subject to the Discharge Order.

Accordingly, for the foregoing reasons, it is

**ORDERED**, that the Motion is hereby **GRANTED** in part and **DENIED** in part as provided herein:

a) Debtor's request for attorney's fees and expenses is **GRANTED.** Debtor is awarded reasonable attorney's fees and expenses incurred in prosecuting the Motion in an amount to be determined by separate application and order.

b) Debtor's request for actual damages is **DENIED.**

c) Debtor's request for punitive damages is **DENIED.**

d) Debtor's request to enjoin Respondent's further prosecution of the State Court litigation is **DENIED** without prejudice.

The Clerk's office is directed to serve a copy of this Order on counsel for Respondent, counsel for Debtor, and the chapter 7 trustee.

END OF DOCUMENT